Richard M. Garbarini (RG 5496)
GARBARINI FITZGERALD P.C.
250 Park Avenue
7th Floor
New York, New York 10177
Telephone: (212) 300-5358
Facsimile: (347) 218-9478

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
YESH MUSIC, LLC, and JOHN K. EMANUELLE,   Index No.: 15-cv-6179
individually,

                Plaintiffs,     **COMPLAINT AND JURY DEMAND**
                                **FOR DAMAGES FOR COPYRIGHT**
      v.                              **INFRINGEMENT**

RDIO INC.,

                Defendant.
-----------------------------------------------------------------x

      Plaintiffs YESH MUSIC, LLC and JOHN EMANELE by and through their attorneys at GARBARINI FITZGERALD P.C., bring this Complaint and Jury Demand against Defendant RDIO INC. based on copyright infringement pursuant to the Copyright Act and Copyright Revisions Act, 17 U.S.C. §§ 101 *et seq*. (the "Copyright Act" or "Act").

## NATURE OF THE ACTION

      1.    As described in more detail below, Defendant RDIO has violated Section 115 of the Act and willfully infringed Plaintiffs' one hundred and eighteen (118) registered copyrights identified in the registration certificates attached as **Exhibit A** hereto, and by this reference incorporated into this Complaint (the "Copyrighted Compositions").

2. Defendant has made YESH's one hundred and sixteen (116) Copyrighted Compositions available for streaming and tethered download on Defendant's RDIO service found on the Internet at <www.rdio.com>. Defendant's service is interactive and subject to Section 115 of Title 17 of the United States Code. Under Section 115, RDIO was required to serve a Notice of Intent to Obtain a Compulsory License ("NOI"), in the form proscribed by 37 CFR § 201.18, within thirty (30) days from the date each Copyrighted Composition was included on its service. As of the date of this Complaint, RDIO failed to serve NOIs for fifty five (55) of YESH's one hundred and fifteen (115) Copyrighted Compositions, and served facially invalid NOIs for the rest. The NOIs that were served on YESH were invalid because they were served at least six months after the songs were made available on Defendant's Service. The NOIs served also failed to comply with the notice requirements proscribed by Section 115, and are facially invalid. Moreover, every NOI served on YESH was for the calendar year in which the NOI was served, and has long expired, without renewal. As a direct result, Defendant has infringed all of YESH's one hundred and sixteen (116) copyrights at issue.

3. Defendant made available all 109 musical compositions of Plaintiff John K. Emanuele, which were subject to two copyright registrations. Defendant served one untimely NOI for one song. As a direct result, Defendant has infringed both of EMANUELE's copyrights at issue.

4. RDIO was contacted by correspondence from counsel dated June 20, 2015, but elected to ignore Plaintiffs' counsel and continue to stream the Copyrighted Compositions. Defendant is afforded tremendous rights under Section 115 of the Copyright Act. Defendant can compel Plaintiffs to give them a "mechanical" license, and charge a ridiculously low per stream

rate for the "mechanical" royalty rights. In return, Defendant is strictly obligated to abide by the statutory notice provisions of Section 115; which Defendant has elected to ignore.

5. As a result, Defendant has lost its right to serve compulsory licenses for Plaintiffs' Copyrighted Compositions. Further, Defendant's failure to comply with Section 115 was done as a matter of cost-cutting business practice, and only an award at the higher end of the statutory framework will serve to curtail Defendant's predatory behavior as detailed below.

## PARTIES

6. Plaintiff Yesh Music, LLC is a limited liability company organized under the laws of the State of New York, with its principal offices located at 75-10 197th Street, Flushing, New York. YESH is engaged in, among other things, the business of music publishing and otherwise commercially exploiting its copyrighted sound recordings of the band *The American Dollar*. The sole members of Plaintiff are Richard Cupolo and John Emanuele, who are also the sole composers of the Copyrighted Compositions.

7. Plaintiff John K. Emanuele is an individual and resident of Queens. EMANUELE released two collections of songs under the name "Zero Bedroom Apartment", which Defendant elected to make available to the public without service of an NOI or payment of royalties.

8. Plaintiffs are informed and believe, and on that basis aver, that Defendant RDIO Inc. ("RDIO") is a Delaware corporation, with its principal business address at 1550 Bryant Street, Ste. 200, San Francisco, CA 94103.

## JURISDICTION AND VENUE

9. The jurisdiction of this Court is based upon 28 U.S.C. § 1331 in that this controversy arises under the Copyright Act and Copyright Revision Act of 1976 (17 U.S.C. § 101 et seq.).

10. Plaintiffs have the right to bring the within action pursuant to 17 U.S.C. § 501(b).

11. Personal jurisdiction over Defendant RDIO is proper in this Court, among other reasons, on the ground that RDIO, through its interactive web-based subscription service, caused the distribution of the Copyrighted Compositions throughout the State of New York, including within this Judicial District. Other wrongful conduct alleged herein, occurred, in part, in the State of New York and in this Judicial District.

12. The Court has personal jurisdiction over Defendant RDIO pursuant to CPLR § 302 (New York's long-arm statute) due to its continuous and systematic business activities within New York as described below.

13. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 (b) and (c).

14. Copies of each certificate issued by the U.S. Copyright Office and assignments registered with the U.S. Copyright Office are annexed and incorporated hereto respectively as **Exhibits A** and **B.**

15. Each of Copyrighted Compositions was registered within three months of publication, and satisfies the registration prerequisite under 17 U.S.C. 412(c).

## FACTS APPLICABLE TO BOTH PLAINTIFFS

16. As a general proposition, a copyright confers on the owner the exclusive right to reproduce the copyrighted work.

17. Absent a license from the copyright owner, which the owner is free to grant or deny, reproduction of the work by another constitutes copyright infringement.

18. When Congress enacted the Copyright Act of 1909, it was concerned that exclusivity with respect to musical compositions would give rise to "a great music monopoly." It therefore modified the principle of exclusivity in the case of nondramatic musical works by

enacting a compulsory license provision which, in defined circumstances, imposed upon the copyright owner a license permitting the mechanical recording of the copyrighted song "on such media as a phonograph record or a piano roll."

19. Although recording technology has changed since 1909, licenses to record musical compositions on such media continue to be called "mechanical licenses."

20. The compulsory mechanical license concept was carried forward in Section 115 of the Copyright Act of 1976 which, generally speaking, permits one wishing to record a copyrighted nondramatic musical work to do so in the absence of the copyright owner's consent in exchange for payment of a statutory royalty. But the availability of compulsory mechanical licenses is dependent on the strict limitations of Section 115(b)(1) of the Act which requires in pertinent part that "[a]ny person who wishes to obtain a compulsory license under this section shall, before or within thirty days after making, and before distributing any phonorecords of the work, serve notice of intention to do so on the copyright owner."

21. Under Section 115, the consequences of any lapse are severe: "failure to serve or file the notice required by clause (1) forecloses the possibility of a compulsory license and, in the absence of a negotiated license, renders the making and distribution of phonorecords actionable as acts of infringement ..."

22. The failure to serve the notice of intention before the start of distribution precludes the creation of a compulsory license, and it does so both as to copies distributed prior to service and as to copies distributed thereafter.

23. The tremendous power granted to Defendant under Section 115 is balanced by the strict obligations regarding notice. Defendant intentionally failed to adhere to its Section 115 obligations, while enjoying all of the benefits afforded by Section 115

## FACTS APPLICABLE TO YESH

24. YESH consists of two men who have been professional musicians since they were 16 years old. In fact, at 16 years old, John Emanuele and Rich Cupolo played at CBGB and recorded and released two EPs. While attending Townsend Harris High School in Queens, Emanuele and Cupolo won the Bertlesmann Songwriting contest. Since they were 25 years old, Emanuel and Cupolo, now thirty, have exclusively earned their living from exploiting their Copyrighted Compositions.

25. Digital downloads represent 50% of the money generated from the Copyrighted Compositions. The other 50% comes from licensing for varied uses including motion pictures, commercials, and video games. Examples of some of the licensed uses are as follows:

| Motion Pictures | Production Company |
|---|---|
| Extremely Loud & Incredibly Close | Warner Brothers |
| Up In The Air | Paramount Pictures |
| Coast Modern | Two Fold Film |
| Damnation | Felt Soul Media |
| Eastern Rises | Felt Soul Media |
| Officer Down | Felt Soul Media |
| Yami no Ichi Nichi | Mario Junn |
| Nuclear Family | Ian Hawkins |

| Television Program | Production Company |
|---|---|
| CSI: Miami | CBS/Paramount |
| Spring Watch | Fox Television |
| Nike Battlegrounds | MTV/Viacom |

6

| | |
|---|---|
| Real World/Road Rules | Bunim Murray/MTV |
| Red Band Society | Fox Television |
| Hawthorne | TNT Networks |
| Human Planet | Discovery Network |
| Outside Today | Outside TV |
| Mrs. Eastwood & Co | Bunim Murray/MTV |
| Teen Mom | MTV/Viacom |
| Sixteen and Pregnant | MTV/Viacom |
| Keeping Up With The Kardashians | Burnim Murray/E Television |
| Alaska: The Last Frontier | Discovery Networks |
| The Vineyard | ABC Family |
| Gott und die Welt | German TV ARD |
| America's Psychic Challenge | Bunim Murray Productions |
| Caged | MTV/Viacom |
| True Life | MTV/Viacom |
| This Is How I Made It | MTV/Viacom |
| TO Show | VH1/Viacom |
| Styl'd | MTV/Viacom |
| Life of Ryan | MTV/Viacom |
| If You Really Knew Me | MTV/Viacom |
| Taboo Nation | National Geographic |
| Shahs of Sunset | Ryan Seacrest Productions |
| How I Rock It | Ryan Seacrest Productions |
| Popland | MTV/Viacom |

| **Commercials** | **Company** |
|---|---|
| Infiniti Automobile | Infiniti Automobiles |

| | |
|---|---|
| Samsung Smart TV | Samsung |
| GoPro Camera | GoPro Cameras |
| Elle Magazine UK \| Dubai Teaser | Elle Magazine UK |
| Pre-Auction Statement | Leonardo DiCaprio Foundation |
| Subaru Online Advertisement | Subaru (Switzerland) |
| Burton Snowboard | Burton Snowboards |
| O'Neill Europe Advertisements | O'Neill Europe |
| Dove | Dove |
| DC Shoes | DC Shoes |
| Converse Web | Converse |
| NBA Playoffs Commercial | ESPN |
| CanonOptics Advertisement | CanonOptics / Burton |
| Telluride Tourism Board | Telluride Tourism Board |
| Unit Clothing | Unit Clothing Enter. |
| Viasat Baltics | Viasat Baltics |
| Morgan Stanley | Morgan Stanley/Chief Ent. |

| Video Game | Company |
|---|---|
| The Amazing Spiderman | Activision |

26. RDIO intentionally infringed YESH's one hundred and sixteen (116) Copyrighted Compositions, by, among other things, making the Copyrighted Compositions available for unlawful and unauthorized digital download and distribution to the public through its interactive Internet subscription music service found at <www.rdiocom> (the "RDIO Service"), without a license under 17 U.S.C. § 115.

27. The RDIO Service allows the user to pick which song the user wants to hear, and is therefore an interactive service pursuant to 17 U.S.C. § 114(j)(7) of the Copyright Act. As such, RDIO was obligated to obtain licenses for both the sound recordings ("Master Recording License") and compositions ("Mechanical License") for every song it offers on its service.

28. The license for the physical sound recordings here -- Master Recording License -- was granted to RDIO through TuneCore. TuneCore functions like a music label, allowing artists to submit the master recordings through TuneCore to various "Digital Stores" for review.

29. At no time did TuneCore hold itself out as conveying a mechanical license for the compositions submitted on behalf of Plaintiff. Further, it is axiomatic that a mechanical license to record and distribute the songs must be obtained in order to lawfully make the recordings available for temporary stream or permanent download.

30. On or about October 1, 2012, Plaintiff YESH, through TuneCore, made numerous collections of individual compositions available to Defendant for review. Defendant had the option to reject the musical compositions, or include the musical compositions on its service. Defendant elected the latter, which then vested in Defendant the statutory obligations under Section 115 in order to obtain the mechanical license via an NOI or agreement of the parties for each work. Annexed as **Exhibit C** and incorporated hereto as if stated at length herein, is a chart of the compositions which Defendant elected to make available on its service, along with the dates Defendant made the compositions available and whether an untimely and expired NOI was served.

31. The October 1, 2012 collections are titled: *The American Dollar* (10 songs), *A Memory Stream* (11 songs), *Ambient One* (16 songs), *Ambient Three* (17 songs), *Ambient Two* (14 songs), *Atlas* (13 songs), *Awake in the City* (12 songs), and *Live in Brooklyn* (8 songs); contained an aggregate sum of eighty five (85) Copyrighted Compositions.

32. Plaintiff YESH does not have "albums" of songs in the traditional sense, but releases collections of individual songs which are not an integrated work. For that reason, numerous musical compositions appear in two or three of the collections.

33. Defendant elected to stream all eighty five (85) musical compositions, but did not serve any NOIs, or pay any royalties.

34. Defendant did finally manage to serve an NOI, dated December 20, 2012, for four of the eighty five (85) compositions identified in **Exhibit C**, falsely claiming that the four identified works would not be streamed until January 4, 2013 (the "December 20, 2012 NOI"). Annexed hereto as **Exhibit D** is a true and correct copy of the December 2012 NOI from RDIO to YESH.

35. On December 20, 2012, RDIO had been streaming all of the eighty five (85) compositions, identified in **Exhibit C,** for almost three months, yet paid no royalties, and served no timely NOIs for any of the works.

36. The December 20, 2012 NOI is also facially invalid because it misstates the date of intended use.

37. Defendant served its next NOI on YESH on or about April 9, 2013, for sixty three (63) of the compositions identified in **Exhibit C**. The April 9, 2013 NOI was defective at the time served, and now, because the subject sixty three (63) songs had been available on RDIO's Service for over six months at the time the NOI was served. Further, on April 9, 2013, Defendant had failed to pay any royalties for any of the eighty five (85) songs identified in **Exhibit B**.

38. The April 9, 2013 NOI was also defective in that it claimed the identified works would not be available on its service until April 19, 203, despite the fact that all of the songs had been on the service for over six months.

## THE OTHER SUBMISSIONS BY YESH

39. YESH released four more collections of songs to Defendant which were made available almost immediately on the RDIO Service; namely, (i) *From The Inland Sea* released on November 29, 2012 containing 3 songs, (ii) *Best of The American Dollar (Volume Two - Ambient)* released on December 20, 2012 containing 12 songs, and (iii) *Best of The American Dollar* released on July 9, 2013 containing 14 songs. Defendant made all twenty seven (27) tracks available on its service, but only managed to serve one NOI dated July 16, 2013 for four songs that were available on the RDIO Service a year prior to the NOI.

40. Plaintiff YESH next released: (iv) *Music For Sleep* on December 12, 2013 containing 10 songs, (v) *Music For Focus and Creativity* on December 10, 2013 containing 50 songs, and (v) the *Five Album Set and Bonus EP*'s on May 5, 2014 containing 72 songs. Defendant made all one hundred and thirty two (132) tracks available immediately on its RDIO Service, but only managed to serve one woefully late NOI dated May 7 2015 for one song on two albums made available years earlier.

41. Annexed hereto as **Exhibit D** are all NOIs served by Defendant on YESH by RDIO.

42. To date, Defendant has not served an NOI for fifty five (55) of YESH's Copyrighted Compositions. See **Exhibit C**. The fifty five (55) Copyrighted Compositions with no NOI appear in multiple compilations, but Defendant failed to serve an NOI for any of the fifty five (55) works as they appear on any compilation made available by Defendant.

43. Defendant has no excuse for these fifty five (55) Copyrighted Compositions, and Plaintiff YESH should be granted an

11

44. Defendant should have served NOIs for all two hundred and fifty nine (259) tracks aggregated or all compilations. Instead, Defendant served facially invalid and woefully late NOIs covering sixty two (62) tracks on various compilations.

45. The vast majority of the NOIs served were served at least six months after the compositions were made available, some over a year and a half after the tracks were made available.

46. None of the NOIs served on YESH properly identified the release date on Defendant's service.

47. All of the NOIs were a license for the calendar year and have expired with no renewal.

48. Consequently, no argument can be made that every one of YESH's one hundred and sixteen (116) Copyrighted Compositions is being made available on Defendant's RDIO Service, with no license under Section 115, and Defendant has infringed each.

49. Defendant obviously knew of its duty to serve NOIs.

50. On May 8, 2014, Defendant sent a check in the amount of $51.27 for the purported retroactive stream fees.

51. Defendant has made no other payments for the mechanical royalties.

52. The check for $51.27 was tendered back to RDIO.

53. On or about June 20, 2015, RDIO was contacted by correspondence from Plaintiffs' counsel, and notified that YESH had not received valid NOIs for any of the musical compositions being streamed on the RDIO Service; RDIO did not respond.

54. In the four months after Defendant was put on notice by counsel, RDIO has continued to stream YESH's one hundred and sixteen (116) Copyrighted Compositions. This is

the definition of "intentional" under 17 U.S.C. § 504(c)(2). Defendant, acted willfully and wantonly, or at least with reckless disregard to YESH's rights.

55. Defendant is liable for infringement of YESH's exclusive rights to the Copyrighted Compositions as provided by clauses (1) and (3) of section 106 of the Copyright Act.

56. Upon information and belief, Defendant made a business decision that it was more cost effective to infringe the copyrights of independent musicians than spend the time and money contacting every rights owner.

### FACTS APPLICABLE TO PLAINTIFF JOHN K. EMANUELE

57. Plaintiff EMANUELE released two collections of music, via TuneCore, for his solo project called "Zero Bedroom Hotel". The first collection, titled *Filmmuzic*, had 19 tracks and was made available by Defendant on or about February 5, 2011. The second collection, titled *Complete Discography 2009-2013*, was made available by Defendant on or about April 9, 2013, and contained 90 songs. The 109 songs are covered by two copyright registrations attached as part of **Exhibit B**.

58. Defendant served a single NOI, on the wrong party, for one song. Defendant's untimely, erroneous, and facially invalid NOI is attached as **Exhibit E**.

59. Defendant cannot be heard to argue that it has infringed both Registered Copyrights of John K. Emanuele.

### FIRST CLAIM FOR RELIEF
### COPYRIGHT INFRINGEMENT

60. Plaintiffs incorporate the allegations contained in the preceding paragraphs as if set forth at length here.

61. Defendant has, without a "mechanical" license under Section 115 from Plaintiffs, reproduced and publicly performed and/or publicly distributed Plaintiffs' Copyrighted Compositions through its interactive web-based subscription streaming service.

62. It cannot be disputed that the Plaintiffs have valid, registered copyrights, and that Defendant has reproduced and offered the Copyrighted Compositions for streaming, including permanent and temporary digital download, without a license, thus infringing Plaintiffs' rights under Section 115 of the Copyright Act. Irreparable injury is presumed here as Plaintiffs have established a prima facie case of copyright infringement.

63. Even after Defendant was put on notice, over four months ago, that it had no license or authority, Defendant elected to continue to reproduce and publicly perform and/or publicly distribute YESH's Copyrighted Compositions through its subscription service.

64. The making or the distribution, or both, of all Copyrighted Compositions without the payment of royalties is actionable as acts of infringement under section 501 and fully subject to the remedies provided by sections 502 through 506 and 509.

65. Defendant made a single royalty payment to YESH purportedly for retroactive royalties made over one year and six months after Defendant made Plaintiff YESH's Copyrighted Compositions available. Each time the Plaintiffs were deprived of their statutory entitlement, e.g., by non-payment of royalties, a distinct harm was done to Plaintiffs' property interest.

66. As a direct and proximate result of each of the Defendant's infringement, Plaintiffs have incurred damages, as described more fully above. Pursuant to 37 C.F.R. § 385, Plaintiffs are entitled to a "per stream" statutory royalty rate of $.01 for interactive web-based streaming services like Defendant.

67. Plaintiffs may also elect to recover statutory damages pursuant to 17 U.S.C. § 504(c)(2) for willful infringement of up to $150,000, but no less than $30,000, for each infringement of each copyright registration identified in **Exhibit A**, as available under the law.

68. Defendant's predatory conduct was clearly intentional within the meaning of 504(c)(2) for purposes of enhancing statutory damages. Defendant knew that its actions constituted an infringement each time it failed to serve an NOI or make a royalty payment.

69. Defendant certainly acted with conscious knowledge after it was put on notice by Plaintiffs in June 2015.

70. Defendant's knowledge may also be inferred from its conduct including the reckless disregard of the Plaintiffs' right (rather than actual knowledge of infringement), which suffices to warrant award of the enhanced damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

A. Plaintiffs demands statutory damages in the amount of $150,000 per infringement for each Copyright Registration identified in the annexed **Exhibit A**, but in no case less than $30,000 with respect to each infringement, or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c);

B. for Plaintiffs' actual damage if Plaintiffs so elect;

C. attorneys' fees costs and disbursements in this action pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117; and,

D. for such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: October 24, 2015                                          **GARBARINI FITZGERALD P.C.**

                                                                 By: _/s/ Richard M. Garbarini_
                                                                 Richard M. Garbarini
                                                                 Richard M. Garbarini (RG 5496)
                                                                 250 Park Avenue
                                                                 7th Floor
                                                                 New York, New York 10177
                                                                 Telephone: (212) 300-5358
                                                                 Facsimile: (347) 218-9479